# GREGG COMPANY, LTD.,

*v.*

# UTUADO SUGAR COMPANY.

San Juan, Equity, No. 898.

### CLAIM OF IGLESIAS.

Receivership—Operation of Sugar Central—Loan to Receiver—Lien Holders.

1. Where the prior lien holders of a sugar central have tacitly consented to a loan made to the receiver under order of the court to keep the central in operation, they will not be heard to complain against the allowance of the claim as preferential.

Receivership—Money Lent to Receiver.

2. Money lent to a receiver under order of the court to keep a sugar central in operation is not money lent to the central, and is an administrative debt of the receivership.

Receivership—Money Lent to Receiver—Crop Lien.

3. Where one lends money to a receiver and secures it by a lien on a given crop and this security results insufficient, the unpaid balance will not rank with operating expenses but will rank in a class by itself after all receivership claims which have been allowed.

Receivership—Money Lent to Receiver under Unauthorized Order.

4. Where one lends money to a receiver under a contract not authorized by the court, interest paid up to the time of the closing of the mill will be respected, but interest after that date must be at the legal rate.

Opinion filed August 10, 1916.

*Mr. Jorge Dominguez* for Iglesias.

Gregg Co. v. Utuado Sugar Co.

*Mr. Chas. Hartzell* for Lascelles & Company.

*Mr. José A. Poventud* for Armstrong & Company.

HAMILTON, Judge, delivered the following opinion:

Standing Master Dabney some time since reported in regard to the claim of Iglesias, and the court has had the matter under consideration in several forms. The opinions of the court were to the effect that whatever of the amount of $30,000 advanced under the order of June 30, 1913, went to the preservation of the property should be given a certain high rank, and it was referred to Receiver Hubbard to ascertain the amount in question. His report of March 11, 1916, shows that this amount is 2,774.64, and since the confirmation of the report this has been treated as an administration expense and dividends paid thereon accordingly. There remains, however, $9,519.82, which was not regarded as an administration expense, and that portion of Master Dabney's report has never been expressly passed upon. It has been under submission, and the court desires now to decide the point.

1. It has already been settled in the opinions of the court that the whole loan of $30,000 by Iglesias was made under the direction of this court and with at least the implied consent of all parties in interest. No objection was made to the order at the time it was made, and no objection was made to the use of the money for the making and grinding of the crop. In point of fact, it seemed to be supposed on all hands that the crop would pay for itself. The loan certainly had the advantage of keeping the plant in operation, keeping its colonos and some business in-

terests of the central intact, and all this without opposition on the part of anyone until it was found that, on account of bad crops, the money could not be paid back. Thereupon, on April, 1914, on application of creditors, the court ordered discontinuance of grinding, and later made other arrangements.

Former opinions of this court show that it appreciates fully the question whether even the court can authorize the carrying on of the business of a central without the consent of the bondholders. There seems to be no question as to operating a railroad, while there is a great deal of question as to private business, and how far a sugar central comes under the one or the other class perhaps has not been definitely decided. Certainly it would be preferable to have the consent of all prior lien holders such as mortgagees, and, in the case at bar, while there may not have been a formal consent, these lien holders were represented in court and made no objection. So that whatever may be the case in future, should objection be made by mortgage bondholders to applications to borrow money to operate a sugar central, it is not considered that the point is important at this time. The loan of Iglesias must be considered as having been made without opposition, if not with the tacit consent of all parties in interest.

2. This being so, the conclusion of the master that the loan is merely a common debt of the central cannot be sustained. It never was a debt of the central. It was either a debt made by the receiver in his capacity as such, or it is a debt which he made without any authority and as to which he could be sued on his bond. It cannot be held to be of the latter class. It was certainly made by him by direct order of this court, and it would have consequences reaching beyond this case for the court not

to support an order which it made and which was in effect consented to by all concerned. The $9,519.82 balance must be held, therefore, as an administration debt.

3. Nevertheless it was a debt which was not made in the manner in which the court directed. Primarily this attempt to create a special security for Iglesias has resulted to his disadvantage, for the lien upon the crop upon which he relied did not pay more than half his debt. The balance above named cannot be considered as ranking with operating expenses, as might possibly have been the case had the contract been as authorized by the court and evidenced by a receiver's certificate. As it stands, it was a loan to the receiver made in an informal manner, and may be respected and protected as such, but will have to rank in a class by itself after all other receivership claims which have heretofore been allowed. It will stand at the foot of the list but will rank as a receivership claim. It will necessarily come ahead of all claims antedating the receivership debts, such as the claims of Armstrong and others.

4. Incidentally the question of interest is important. Whatever has been paid back as interest prior to closing the operation of the mill will not be disturbed. That was carried out by the parties to the arrangement,—the receiver on the one side and Iglesias on the other. But this does not control the rate of interest to be allowed since that time. The receiver and Iglesias not having made the contract authorized by the court, it is more in the nature of repaying money had and received than strictly under a court contract. The amount is fixed, but in that view of it, there being no contract as authorized by the court, there is no recognition of interest at any particular rate. Under such circumstances, interest from the date the mill stopped grinding

must be taken into account at the legal rate; that is to say, 6 per cent.

A decree will be entered accordingly.